## GRILLO v. ROYAL NORWEGIAN GOVERNMENT.

### No. 113.

Circuit Court of Appeals, Second Circuit.

Nov. 16, 1943.

Before L. HAND, CLARK, and FRANK, Circuit Judges.

Edgar R. Kraetzer and Haight, Griffin, Deming & Gardner, all of New York City (J. Ward O'Neill, of New York City, of counsel), for appellant.

Francis M. Verrilli and Joseph F. Ruggieri, both of Brooklyn, N. Y., for appellee.

L. HAND, Circuit Judge.

This is an appeal from a decree in the admiralty, awarding damages to a stevedore for injuries suffered under the following circumstances. The libellant was in the employ of a stevedoring company, engaged by the New York Central Railroad to load a cargo from one of its lighters onto the steamer, "Ogna," owned by the respondent. The "Ogna" was lying alongside a pier in Brooklyn, the lighter was made fast to her offshore side, and during the lading the libellant, who was one of the gang on the lighter, had to go ashore to get a crowbar on the dock. To do so he had to cross the deck of the ship, to gain which he used a rope ladder (Jacob's ladder), hanging over the ship's side opposite the hatch where he was working. He testified—and his testimony was to some extent corroborated by three fellow workmen—that, while he was climbing up, the rope on one side of the ladder broke, and he fell to the deck of the lighter. The respondent produced a Jacob's ladder which two of the ship's officers said they had found hanging over the ship's side aft-

er the accident, and which was sound except that the two lower rungs had apparently been cut off. This ladder had two ropes on either side, while the ladder described by the libellant had only one rope. The respondent acknowledges that the ladder with two ropes which it produced was part of the ship's gear, but argues that, since the libellant and his witnesses repudiate that ladder as the one from which he fell, the record is barren of any evidence to fasten liability upon the ship for the ladder which actually did break; hence the libellant failed in his proof. The respondent also argues that, consistently with our decision in The No. 34, 2 Cir., 25 F.2d 602, in the case at bar the ship was not liable in any event, since her duty to the libellant began only after the cargo was delivered to the · slings—if indeed it began until the slings crossed her rail—and that the libellant's work went no further than to load the slings.

It was of course possible altogether to disbelieve that the libellant was injured in the way he describes; that is, to find that he never started up any ladder, or that if he did, it did not break but that he slipped and fell. That is not the defence, as we understand it; and if it were, it would fail, for we could not say that it was "clearly erroneous" to accept the libellant's story. The actual defence: i. e., that the ladder which broke was not shown to have been part of the ship's gear, or to have been put in position by any authorized person, would, however, be good, if the ship were under no affirmative duty to provide the libellant with safe ingress and egress to to and from the lighter. If, however, such a duty did exist, it included the presence of a sound ladder, and, prima facie, it was violated when the only ladder actually in place was defective. That does not of course mean that if the ship had proved that she installed a proper ladder, and that someone shortly before substituted a defective one, it would be no defence. But she offered no such proof: only that at a later time a sound ladder was found. Even if that testimony were true—and the judge was not bound to accept it—it was no answer to the presence of a defective ladder at the critical time. Hence the case comes down to whether there is such an affirmative duty in the premises. Unless there is some reason for making an exception, the situation was the conventional one which used to be called that of an "invited person," and which is now called that of a "business visitor." Restatement of Torts § 343; Comments (a), (e) and (f). The work going on was in the ship's interest— loading her for a prospective voyage in search of profit—and the libellant was obliged to mount the ship's side in order to perform it. Had the occurrence been on shore there could have been no doubt. True, it is not safe to reason by analogy that the same liabilities which arising on shore will arise on the water under the same circumstances; but it is well settled that in this instance the same liability does arise. Pioneer S. S. Co. v. McCann, 6 Cir., 170 F. 873; Pioneer S. S. Co. v. Jenkins, 6 Cir., 189 F. 312; Hamburg-Amerikanische P. A. Gesellschaft v. Gye (semble), 5 Cir., 207 F. 247, 251; Middleton v. P. Sanford Ross, Inc., 5 Cir., 213 F. 6; Consolidation Coastwise Co. v. Conley, 1 Cir., 250 F. 679.

As to The No. 34, supra, · 25 F.2d 602, the facts were these. A lighter alongside a ship was discharging the ship's cargo; and the owner of the lighter had employed a stevedore company to stow the cargo after it was lowered to the deck of the lighter. The ship had employed the same stevedore company to load the slings and lower them over the ship's rail. On the day in question the bargee of the lighter had rigged a ladder of his own down the ship's side, but had rigged it insecurely, so that it slipped while the libellant—an employee of the stevedore company—was using it to reach the deck of the lighter to help in stowing her. The employee sued the stevedore company and the lighter in the state court, and recovered against the stevedore company, but lost against the lighter: the suit before us was by the stevedore company against the lighter. We allowed recovery; and there can be no doubt that we were right because the bargee was at fault, and he was in the employ of the lighter. We did say however that the ship was not liable; and—as between the ship and the lighter—that was true, if the lighter's duty to workmen, employed to stow her, extended to safe ingress over the ship's side to the lighter's deck. It was, however, not necessary to hold that the ship had no duty directly to the employee of the stevedore company, when he was engaged in a work in which the ship was interested; nor do we understand what we said in that sense. So to construe it would, as we have shown, be contrary to a very substantial body of decision. We hold, therefore, that the ship in the case

at bar did owe such a duty to the libellant and that she failed to discharge it.

A point is also made that the libellant was himself negligent because of the way that he went up the ladder; but there is not the least reason for supposing that this had anything to do with the breaking of the rope. Had he slipped because he was unhandy in his ascent, it would have been another matter.

Decree affirmed.