### MILITANO v. UNITED STATES.

### SAME v. STATES MARINE CORPORATION.

Nos. 240, 241, Docket 20150, 51.

Circuit Court of Appeals, Second Circuit.
July 9, 1946.

See also, D.C., 55 F.Supp. 904.

Jacob Rassner, of New York City, for appellant.

Corydon B. Dunham and John F. X. McGohey, U. S. Atty., both of New York City, for appellees.

Before L. HAND, SWAN, and PHILLIPS, Circuit Judges.

SWAN, Circuit Judge.

The appellant was a stevedore·in the employ of the United States at the Army Base, Brooklyn, N. Y. On·January 19, 1943 he was ordered aboard the S. S. "Benjamin Hawkins" to operate a winch at hatch No. 5 in loading government-owned cargo. This vessel was a Liberty ship owned by the United States and managed

by States Marine Corporation under a general agency contract with the War Shipping Administration; she lay at a pier at the Army Base. While performing his work as winchman the appellant suffered injuries to the fingers of his left hand by reason, as he claims, of defects in the wire cable running from the drum to the gin block. To recover damages for such injuries he filed a libel against the United States and a civil action in tort against States Marine Corporation. A jury trial having been waived in the latter action the two cases were tried together to the court and resulted in a judgment of dismissal in each.

■ The libel was dismissed on the ground that suit was barred because the libelant on Feburary 19, 1943 filed a claim with the United States Employees' Compensation Commission and such proceedings were had thereon that thereafter he was allowed and accepted compensation of $193.75. This was a valid defense to the libel. As a stevedore in the employment of the United States Militano was entitled to the benefits of the Federal Employees' Compensation Act, 5 U.S.C.A. § 751. By applying for and accepting compensation under this Act he elected his remedy and surrendered any right of action he may have had against the United States under either the Suits in Admiralty Act, if the ship was a "merchant vessel," 46 U.S.C.A. § 741, or the Public Vessels Act, if the ship was a "public vessel," 46 U.S.C.A. § 781.[1] Dahn v. Davis, 258 U.S. 421, 42 S.Ct. 320, 66 L.Ed. 696; Brady v. Roosevelt S. S. Co., 317 U.S. 575, 581, 63 S.Ct. 425, 87 L.Ed. 471. The libelant disputes this conclusion on the ground that no "award" was made by the commission as required by section 36 of the Act, 5 U.S.C.A. § 786. But the record does not support the contention. The commission dealt with his application in the usual manner and marked the file "Final," which meant that the claim was closed, subject only to being reopened if an additional claim for recurrent disability should be filed; and none was. He was allowed and accepted everything he claimed under the Compensation Act and the authorities above cited establish the rule that this barred his suit against the United States.

■ The libelant also urges that his rights are to be found in the Act of March 24, 1943, 50 U.S.C.A.Appendix, § 1291, which expressly provides that "seamen" to whom it applies "shall not be considered as officers or employees of the United States for the purposes of the United States Employees Compensation Act." But acceptance of this argument is precluded by the very terms of § 1291 which limits "seamen" to "officers and members of crews * * * employed on United States or foreign flag vessels as employees of the United States through the War Shipping Administration." Militano was not a member of the crew of the Benjamin Hawkins, nor was he employed through the War Shipping Administration. He was a longshoreman on the stevedore payroll of the Army Base in Brooklyn. Moreover, the section sets up another hurdle which Militano cannot jump, even if he were held to be a seaman within the meaning of the Act. It requires that a claim in writing be filed for consideration by the War Shipping Administration and be "administratively disallowed" before a suit can be brought against the United States. Fox v. Alcoa S. S. Co., 5 Cir., 143 F.2d 667, certiorari denied 323 U.S. 788, 65 S.Ct. 313, 89 L.Ed. 628. No such claim was filed by the libelant. For the foregoing reasons dismissal of the libel must be affirmed.

■ We now pass to a consideration of the action against States Marine Corporation. In as much as the plaintiff is a citizen and resident of New York and the defendant is a corporation of the same

---

[1] The libelant appears to rely on the Suits in Admiralty Act. The respondent's answer asserts that the "Hawkins" was a public vessel. The trial judge made no finding whether the ship was employed as a merchant vessel or a public vessel. For present purposes the issue is immaterial. Nor need we determine whether the Public Vessels Act gives any recovery for personal injuries sustained by an employee on a public vessel. See O'Neal v. United States, D. C.E.D.N.Y., 11 F.2d 869, affirmed, 2 Cir., 11 F.2d 871, cf. Porello v. United States, 2 Cir., 153 F.2d 605, certiorari granted American Stevedores, Inc., v. Porello, 66 S.Ct. 1013. On either view dismissal of the libel was correct.

state, federal jurisdiction cannot rest on diversity of citizenship. Since the plaintiff's counsel conceded that the Jones Act, 46 U.S.C.A. § 688, is inapplicable because there was no employer-employee relationship between the defendant and the plaintiff, the trial judge treated the case as though transformed into a suit in admiralty stating an ordinary claim for negligence. Under the terms of the general agency agreement between the defendant and the War Shipping Administration any recovery by the plaintiff would ultimately be paid by the United States. Consequently the trial judge was of the opinion that to allow recovery against the agent would be an "evasion of the legal principle" that led him to dismiss the libel. This conclusion would have been correct under the authority of the United States Shipping Board Merchant Fleet Corp. v. Lustgarten, 280 U.S. 320, 50 S.Ct. 118, 74 L.Ed. 451, but that case was overruled in Brady v. Roosevelt S. S. Co., 317 U.S. 575, 63 S.Ct. 425, 87 L.Ed. 471, as this court noted in Carroll v. United States, 2 Cir., 133 F.2d 690, 693, and as the Supreme Court expressly stated in Hust v. Moore-McCormack Lines, 66 S.Ct. 1218.

Militano's injuries were caused by the fact that splinters or "fish hooks," which had developed in some of the strands of the steel cable leading from the drum of the winch he was operating, caught in his glove and drew his left hand into the gin block before he could stop the winch. Relying on the Brady case, supra, he urges that the defective condition of the cable renders liable States Marine as the operating agent of the vessel. The defendant replies that under its agreement with the War Shipping Administration it had no control over the vessel or its crew, was not charged with the duty to repair but merely with the duty to report the condition of the vessel to its principal, the United States, and, if the cable needed to be replaced, it developed upon the crew to replace it, as spare cables were on board. It argues that the Brady case is inapplicable because of differences in the agency agreement there involved and the one under which it was acting. Those differences were pointed out in Murray v. American Export Lines, D.C. S.D.N.Y., 53 F.Supp. 861, where the same form of "Service Agreement" (GAA 4-4-42) was used as in the case at bar.[2] But such differences cannot be deemed material, we think, in view of Hust v. Moore-McCormack Lines, supra. There it was held that a seaman injured by the negligence of a fellow member of the crew could maintain an action under the Jones Act against an operating agent employed under the same form of service agreement as States Marine had, the majority opinion stating (66 S.Ct. at page 1229):

"The mere fact that the terms of the standard agreement were changed to omit the provision for manning the ship and substitute the provisions relating to employees contained in the General Service Agreement was not, in these circumstances enough to deprive seamen of that remedy."

The concurring opinion of Justices Douglas and Black (66 S.Ct. at page 1232) clearly states their view that the difference in words between the standard agreement of the Brady case and the service agreement of the Hust case does not "mark a difference in functions of the private operator." If the agent remains the employer sufficiently to be liable to members of the crew under the Jones Act, we think it cannot escape the duties of an owner pro hac vice in other respects. Thus it has the duty to furnish stevedores with a safe place to work, a duty which is analogous to that owed by a landowner to a business visitor. Grillo v. Royal Norwegian Government, 2 Cir., 139 F.2d 237, 238; see Pioneer S. S. Co. v. McCann, 6 Cir., 170 F. 873; Glover v. Compagnie Generale Transatlantique, 5 Cir., 103 F.2d 557, 559, certiorari denied 308 U.S. 550, 60 S.Ct. 83, 84 L.Ed. 462.

The district court stated as "conclusions of law":

"1. Plaintiff has failed to make proof of facts which establish by a fair preponderance of the evidence that the de-

---

[2] See also Hust v. Moore-McCormack Lines, Ore., 158 P.2d 275, and cases therein cited. The Hust case was reversed by the Supreme Court on June 10, 1946. 66 S.Ct. 1218.

fendant was responsible for his injuries by reason of its negligence in the performance of any duty which it owned to him.

"2. The plaintiff was guilty of contributory negligence and upon the proof his negligence is no less than that of any other responsible party contributing to said accident."

But the opinion states that the court is unable to perceive upon what theory the States Marine Corporation can be held liable for negligence. Whether the judge would have made the first finding quoted above if he had thought the defendant under its service agreement was the owner pro hac vice, we do not feel sure. Since we hold that it was, the cause should be remanded for new findings. We do not say that the evidence necessarily proved that the gear supplied Militano was not fit for its service,[3] but we think the case should not be finally dismissed without definite findings on the issue of negligence. The finding of contributory negligence is supportable but as against an operator who is owner pro hac vice, would not be a bar to all recovery in admiralty. See The Max Morris v. Curry, 137 U.S. 1, 11 S.Ct. 29, 34 L.Ed. 586. Accordingly the judgment of dismissal in the case against States Marine Corporation is reversed and the cause remanded for further proceedings.

---

[3] Cf. Glover v. Compagnie Generale Transatlantique, 5 Cir., 103 F.2d 557, certiorari denied 308 U.S. 550, 60 S.Ct. 83, 84 L.Ed. 462.